UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Gary Walker, | Case No.: 2:24-cv-01475-JAD-MDC |
| Plaintiff | |
| v. | **Order Screening First Amended Complaint and Granting Motion to Proceed In Forma Pauperis** |
| State of Nevada, et al., | [ECF Nos. 4, 6] |
| Defendants | |

Nevada inmate Gary Walker has filed a first amended *pro se* civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth Amendment rights were violated when unidentified "John Doe" medical staff members at Nevada's High Desert State Prison (HDSP) ignored his serious medical needs. Walker applies to proceed *in forma pauperis*,[1] and I grant that application and screen his complaint under 28 U.S.C. § 1915A. But a deficiency that I directed Walker to cure months ago now causes me to dismiss his case. Walker still doesn't know the name of his target defendants because he failed to initiate Rule 45 discovery to determine their true names as instructed in my initial screening order.[2] So I dismiss this action without prejudice.

**Background**

**A.      Walker's factual allegations**

In June 2022, Walker was in custody at HDSP and suffering from chronic and severe medical problems, primarily chronic obstructive pulmonary disease (COPD) and asthma. As he explains it, COPD is a serious disease that blocks airflow in the lungs making it difficult for a

---

[1] ECF Nos. 4, 6.

[2] ECF No. 7 at 6–7.

person to breathe.  If not given a timely breathing treatment, the condition can be deadly, and a delay in treatment will cause the condition to become worse. [3]

On June 2, 2022, between 11 a.m. and noon, Walker was having difficulty breathing—gasping for air and feeling lightheaded.  So Walker and his cellmate called the unit officer Jones for help.  They informed Jones of Walker's symptoms, and Jones asked Walker if he wanted "to go man-down."  Walker said yes, and Jones called the medical staff for a man-down situation.  However, Walker received no response as HDSP medical staff did not respond either in-person or by bringing Walker to the infirmary. [4]

Walker's symptoms worsened, so he asked unit officer Jones a second time to call for HDSP medical staff.  Jones told Walker that he called a second time, but again, HDSP medical staff failed to respond.  At 1:00 p.m., Walker asked Jones to call a third time because he knew that the shift was about to change.  Jones said that he would call a third time, but again Walker received no response from HDSP medical staff.  Walker believed that all he needed was the appropriate nebulizer breathing treatment to help his symptoms.  Instead, Walker suffered the whole day and the following night, believing he was going to die. [5]

Due to the delay in treatment, Walker's condition has gotten worse.  He now wakes up nightly wheezing, choking, and gasping for air.  When he is alone in his cell, he suffers panic attacks caused by his fear that he was going to die, untreated, on June 2, 2022.  In the three months that he was housed at HDSP, Walker lost 30 pounds due to the emotional distress and physical damage caused by the lack of treatment. [6]

---

[3] ECF No. 9 at 2–4.
[4] *Id.* at 3, 6, 8.
[5] *Id.*
[6] *Id.* at 4–8.

B.   **Walker's claims**

Based on these allegations, Walker identifies two claims: (1) Cruel and Unusual Punishment under the Eighth Amendment; and (2) Eighth Amendment Deliberate Indifference to Serious Medical Needs. Although Walker lists two separate claims, the facts for each claim are the same. Deliberate indifference to serious medical needs arises under the Eighth Amendment's prohibition on cruel and unusual punishment.[7] So I liberally construe Walker's factual allegations as raising one claim for Eighth Amendment deliberate indifference to serious medical needs against the John Doe HDSP medical staff.

## Discussion

A.   **The court must screen inmate complaints for deficiencies.**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[8] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[9] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[10]

---

[7] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).
[8] *See* 28 U.S.C. § 1915A(a).
[9] *See* 28 U.S.C. § 1915A(b)(1)(2).
[10] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

3

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[11] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[12] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[13] but a plaintiff must provide more than mere labels and conclusions.[14] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[15] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16]

**B.  Walker has failed to take the steps necessary to identify any defendants by the court-ordered deadline.**

In the initial screening order, I found that Walker's factual allegations stated a colorable claim for deliberate indifference to serious medical needs against the Doe Defendants who refused to treat him on June 2, 2022. But without a named defendant, that claim couldn't go anywhere. So I gave Walker until September 20, 2025, to take the steps necessary under Federal Rule of Civil Procedure 45 to prepare and serve subpoenas and discover the names of the medical staff members responsible for ignoring him that day.[17] I explained the Rule 45 process

---

[11] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[12] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[13] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[14] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[16] *Id.*

[17] ECF No. 7 at 6–7.

4

to Walker.[18] I then warned in bold type, "**If Walker does not file a motion to substitute the true names of the doe Defendants by September 20, 2025, this case will be dismissed without prejudice.**"[19] Instead of pursuing Rule 45 discovery, Walker filed an almost identical complaint.[20] So Walker did not file a motion to substitute, and his amended complaint still lacks the names of the staff members who failed to provide treatment.[21]

District courts have the inherent power to control their dockets and "[i]n the exercise of that power, they may impose sanctions including, where appropriate . . . dismissal" of a case.[22] A court may dismiss an action based on a party's failure to obey a court order or comply with local rules.[23] In determining whether to dismiss an action on this ground, the court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives.[24]

The first two factors, the public's interest in expeditiously resolving this litigation and the court's interest in managing its docket, weigh in favor of dismissal of Walker's claims. The third

---

[18] *Id*. at 6.

[19] *Id*. at 6–7.

[20] *Compare* ECF No. 8 *with* ECF No. 9.

[21] Although the use of a "Doe" placeholder to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

[22] *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).

[23] *See Carey v. King*, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (affirming dismissal for failure to comply with local rule requiring *pro se* plaintiffs to keep court apprised of address); *Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order).

[24] *See In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (quoting *Malone*, 833 F.2d at 130).

factor, risk of prejudice to defendants, also weighs in favor of dismissal because a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action.[25] The fourth factor—the public policy favoring disposition of cases on their merits—is greatly outweighed by the factors favoring dismissal.

The fifth factor requires the court to consider whether less drastic alternatives can be used to correct the party's failure that brought about the court's need to consider dismissal.[26] Courts "need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives."[27] Because this action cannot proceed until and unless Walker takes the action necessary to identify the doe defendants, the only alternative is to enter a second order setting another deadline. But the reality of repeating an ignored order is that it often only delays the inevitable and squanders finite resources along the way. The circumstances here do not indicate that this case will be an exception. Setting another deadline is not a meaningful alternative given these circumstances. So, the fifth factor favors dismissal.

Having thoroughly weighed these dismissal factors, I find that they weigh in favor of dismissal. As a result, I dismiss Walker's FAC without prejudice for failure to file a motion to substitute the true names of the doe defendants.

---

[25] *See Anderson v. Air West*, 542 F.2d 522, 524 (9th Cir. 1976).

[26] *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 992 (9th Cir. 1999) (explaining that considering less drastic alternatives *before* the party has disobeyed a court order does not satisfy this factor); *accord Pagtalunan v. Galaza*, 291 F.3d 639, 643 & n.4 (9th Cir. 2002) (explaining that "the persuasive force of" earlier Ninth Circuit cases that "implicitly accepted pursuit of less drastic alternatives prior to disobedience of the court's order as satisfying this element[,]" *i.e.*, like the "initial granting of leave to amend coupled with the warning of dismissal for failure to comply[,]" have been "eroded" by *Yourish*).

[27] *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986).

### C. Walker is granted *in forma pauperis* status, but that just means that the filing fee will be collected from him over time.

Walker also applies to proceed in forma pauperis.[28] Based on the financial-status information that he provides, I find under 28 U.S.C. § 1915 that he is not able to pay an initial installment payment toward the full filing fee, so I grant his application. This status does not relieve Walker of the obligation to pay the filing fee, it just means that he can do so in monthly payments that will be deducted from his inmate account when he has funds available. Those payments will be deducted until the full filing fee is collected from him even though this case is being dismissed.

### Conclusion

IT IS THEREFORE ORDERED that Walker's application to proceed in forma pauperis without having to prepay the filing fee **(ECF Nos. 4, 6)** is **GRANTED**. Walker need not pay an initial installment fee, prepay fees or costs, or provide security for fees or costs, but he is still required to pay the full $350 filing fee under 28 U.S.C. § 1915 even though this case is being dismissed.

To ensure that Walker pays the full filing fee, IT IS FURTHER ORDERED that **the Nevada Department of Corrections must pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of GARY WALKER, #1253916** (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action. The Clerk is directed to **SEND** copies of this order to the Finance

---

[28] ECF Nos. 4, 6 (Walker's application to proceed *in forma pauperis* is at ECF No. 4 and the inmate account statement is at ECF No. 6).

Division of the Clerk's Office <u>and</u> to the attention of **Chief of Inmate Services for the Nevada Department of Corrections**, at formapauperis@doc.nv.gov.

IT IS FURTHER ORDERED that this case is **DISMISSED without prejudice**, and I certify that any *in forma pauperis* appeal from this order would not be taken "in good faith" as contemplated by 28 U.S.C. § 1915(a)(3) because reasonable jurists would not disagree about this resolution. The Clerk of Court is directed to **ENTER JUDGMENT** accordingly and **CLOSE THIS CASE.**

Dated: October 21, 2025

_____
Jennifer A. Dorsey
United States District Judge